**FILED**

JUL 1 0 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Leave to file without
Prepayment of Cost **GRANTED**

*Lago C. Smolyith*
*U.S.D.J. 7/8/08*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Mohammed Abd Al Al Qadir,          )
    Detainee,                      )
    Guantanamo Bay Naval Station   )
    Guantanamo Bay, Cuba;          )
                                   )
*Petitioner,*                      )
                                   )
                                   )
                v.          )
                                   )
                                   )
GEORGE W. BUSH,                    )
    President of the United States  )
    The White House                )
    1600 Pennsylvania Ave., N.W.   )
    Washington, D.C. 20500;        )
                                   )
ROBERT M. GATES,                  )
    Secretary, United States       )
    Department of Defense          )
    1000 Defense Pentagon          )
    Washington, D.C. 20301-1000;   )
                                   )
ADMIRAL MARK H. BUZBY,            )
    Commander, Joint Task Force - GTMO )
    JTF-GTMO                       )
    APO AE 09360; and              )
                                   )
ARMY COL. BRUCE VARGO,            )
    Commander, Joint Detention     )
       Operations Group - JTF-GTMO,   )
    JTF-GTMO                       )
    APO AE 09360,                  )
                                   )
*Respondents/Defendants.*          )

Case: 1:08-cv-01185
Assigned To : Kennedy, Henry H.
Assign. Date : 7/10/2008
Description: Habeas Corpus

**Case Number 1:08 CV ____**

**Judge _____**

**Deck Type: Habeas Corpus**

**Date Stamp _____**

## PETITION FOR WRIT OF HABEAS CORPUS

        Petitioner Mohammed Abd Al Al Qadir (hereinafter "Petitioner Al Qadir") seeks the Great

Writ. Petitioner Al Qadir is a civilian wrongly classified as an "enemy combatant" by the President

of the United States, and is being held virtually *incommunicado* in military custody at the United

States Naval Station at Guantánamo Bay, Cuba ("Guantánamo"), without charge, and without being

**RECEIVED**

JUL - 2 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

afforded any fair process by which he might challenge his detention and his misclassification as an enemy combatant. Petitioner Al Qadir is being held by color and authority of the Executive, and in violation of the Constitution, laws and treaties of the United States as well as customary international law. Accordingly, this Court should issue a Writ of Habeas Corpus compelling Respondents either to release Petitioner Al Qadiror to establish in this Court a lawful basis for Petitioner bin Mohammed's detention and classification. This Court should also order injunctive and declaratory relief.

Pursuant to the President's authority as Commander-in-Chief, his authority under the laws and usages of war, or under the November 13 Executive Order, Respondents George W. Bush, President of the United States, Robert M. Gates, U.S. Secretary of Defense, Admiral Mark H. Buzby, Commander of Joint Task Force-GTMO, and Army Colonel Bruce Vargo, Commander, Joint Detention Operations Group, Joint Task Force-GTMO, are either ultimately responsible for or have been charged with the responsibility of maintaining the custody and control of the detained Petitioner at Guantánamo.

**I       JURISDICTION AND VENUE**

1.       Petitioners bring this action under 28 U.S.C. §§ 2241(c)(1) and (c)(3) and 2242. Petitioners further invoke this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202; 5 U.S.C. § 702; Articles I and II of, and the Fifth, Sixth, and Eighth Amendments to, the United States Constitution. Because they seek declaratory relief, Petitioners also rely on Fed. R. Civ. P. 57.

2.       This Court is empowered under 28 U.S.C. § 2241 to grant this Writ of Habeas Corpus, and to entertain this Petition of Petitioner Al Qadir, under 28 U.S.C. § 2242. This Court is further empowered to declare the rights and other legal relations of the parties herein by 28 U.S.C. § 2201, and to effectuate and enforce declaratory relief by all necessary and proper means by

28 U.S.C. § 2202, as this case involves an actual controversy within the Court's jurisdiction, and to issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

## II.  PARTIES

3.   Petitioner Al Qadir is an Algerian citizen who is presently incarcerated at Guantánamo and held in Respondents' unlawful custody and control.

4.   Respondent George W. Bush is the President of the United States and Commander-in-Chief of the United States Military.  Petitioner Al Qadir is being detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war or, alternatively, pursuant to the Executive Order of November 13, 2001, Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 (November 13, 2001) ("Executive Order").  President Bush is responsible for Petitioner bin Mohammed's unlawful detention and is sued in his official capacity.

5.   Respondent Robert M. Gates is the Secretary of the United States Department of Defense. Pursuant to the President's authority as Commander-in-Chief, under the laws and usages of war or, alternatively pursuant to the Executive Order, Respondent Rumsfeld has been charged with the responsibility of maintaining the custody and control of Petitioner Al Qadir. He is sued in his official capacity.

6.   Respondent Admiral Mark H. Buzby is the Commander of Joint Task Force-GTMO, the task force running the detention operation at Guantánamo.  He has supervisory responsibility for Petitioner Al Qadirand is sued in his official capacity.

7.   Respondent Army Col. Bruce Vargo is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the U.S. facility where Petitioner Al Qadir is presently held. He is the immediate custodian responsible for Petitioner bin Mohammed's detention and is sued in his official capacity.

3

8.    Respondents are directly responsible for any activities undertaken by or under the supervision of any agents or employees acting on their behalf, or of agents or employees of private contractors ("contractor employees") with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantanamo. All references to Respondents' actions in this Petition include activities of Respondents initiated by predecessors in office and continued by them and also include activities performed by Respondents' (or their predecessors') agents or employees, other government agents or employees or contractor employees.

## III    STATEMENT OF FACTS

9.    Petitioner Al Qadir seeks to enforce his right to a judicial determination by an appropriate and lawful authority whether there is a factual and legal basis for Respondents' determination that he is either an "enemy combatant" [as defined by the United States Supreme Court in *Hamdi v. Rumsfeld,* 224 S.Ct. 2633, 2639 (2004)] or an "enemy combatant" as that term is defined and used by the Executive in the Combatant Status Review Tribunals.

10.    Since mid-2002 Petitioner Al Qadir has been and even now remains incarcerated at the U.S. Naval base at Guantánamo, a territory over which the United States exercises exclusive jurisdiction and control. Petitioner Al Qadir sought counsel in 2008 (after passage of the Detainee Treatment Act, as amended by the Military Commissions Act cutting off access to this court and limiting Petitioner Al Qadir and persons similarly detained to a review process in the D.C. Circuit Court of Appeals, in effect a suspension of the right to pursue a Writ of Habeas Corpus. The suspension was made in violation of the U.S. Constitution's Art. 9, cl. 2, Boumediene et al v. Bush, ___ U.S. ___, WL2369628 (June 12, 2008).

11.    Petitioner Al Qadir has not been afforded any procedures that would satisfy his rights under

the most fundamental common law notions of due process, the U.S. Constitution, the laws

and treaties of the United States, or customary international law.

12.    Petitioner Al Qadir desires to pursue in United States courts every available legal challenge

to the lawfulness of his detention. He also asks protection of this court against rendition to

Algeria or other countrries where he would face risk of death, torture or other unhumane

treatment.

**The Joint Resolution**

13.    In the wake of the September 11, 2001 attacks on the United States, the United States, at the

direction of President Bush, began a massive military campaign against the Taliban

government, then in power in Afghanistan. On September 18, 2001, a Joint Resolution of

Congress authorized President Bush to use force against the "nations, organizations, or

persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11,

2001, or [that] harbored such organizations or persons." Joint Resolution 23, Authorization

for Use of Military Force, Public Law 107-40, 115 Stat. 224 (Jan. 18, 2001) ("Joint

Resolution").

14.    Petitioner Al Qadir, did not participate in the armed conflict at any point in time. He is not,

therefore, properly detained pursuant to President Bush's authority as Commander-in-Chief,

under the laws and usages of war, or under the Joint Resolution.

15.    Petitioner Al Qadir is not, and has never been, a member of Al Qaeda or any other terrorist

group, did not commit any violent act against any American person or espouse any violent

act against any American person or property, had no involvement, direct or indirect, in the

terrorist attacks on the United States on September 11, 2001 or any act of international

terrorism attributed by the United States to Al Qaeda or any other terrorist group. He is not

properly subject to President Bush's authority as Commander-in-Chief or under the laws and usages of war.

**The Executive Order**

16.    On November 13, 2001, President Bush issued an Executive Order authorizing Respondent Gates' predecessor to detain indefinitely anyone Respondent Bush has "reason to believe":

  i.    is or was a member of the organization known as al Qaeda;

  ii.    has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefor, that have caused, threaten to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy; or

  iii.    has knowingly harbored one or more individuals described in subparagraphs (i) and (ii).

*See* Executive Order, 66 Fed. Reg. 57,833, §2 (November 13, 2001). President Bush must make this determination in writing. The Executive Order was neither authorized nor directed by Congress, and is beyond the scope of the Joint Resolution of September 18, 2001.

17.    The Executive Order purports to vest President Bush with the sole discretion to identify individuals who fall within its purview. It establishes no standards governing the exercise of his discretion. Once a person has been detained, the Executive Order contains no provision for that person to be notified of the charges he may face. The Executive Order authorizes detainees to be confined indefinitely without charges. It contains no provision for a detainee to be notified of his rights under domestic and international law, and provides neither the right to counsel, nor the rights to notice of consular protection or to consular access at the detainee's request. It provides no right to appear before a neutral tribunal to review the

6

legality of a detainee's continued detention and contains no provision for recourse to an Article III court. In fact, the Executive Order expressly bars review by any court. The Executive Order authorizes indefinite and unreviewable detention, based on nothing more than the President Bush's written determination that an individual is subject to its terms.

18. The Executive Order was promulgated in the United States and in this judicial district, the decision to incarcerate Petitioner Al Qadir was made by Respondents in the United States and in this judicial district, the decision to detain Petitioner Al Qadir at Guantánamo was made in the United States and in this judicial district, and the decision to continue detaining Petitioner Al Qadir, was, and is, being made by Respondents in the United States and in this judicial district.

19. President Bush has never certified or determined in any manner, in writing or otherwise, that Petitioner Al Qadir is subject to the Executive Order.

20. Petitioner Al Qadir is not properly subject to the Executive Order.

21. Petitioner has not been, and is not being, detained lawfully either pursuant to the Executive Order, President Bush's authority as Commander-in-Chief and/or under the laws and usages of war. Petitioner was not arrested or detained by the United States in the course of an armed conflict. Petitioner Al Qadir is not properly detained under President Bush's authority as Commander-in-Chief or under the laws and usages of war.

**Guantánamo**

22. On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan, Pakistan and other U.S. and foreign locations to Camp X-Ray at Guantánamo. In April 2002, all prisoners were transferred to a Camp Delta, a more permanent prison facility at Guantánamo. Currently, prisoners are housed in Camp Delta and Camp Six, an additional maximum-security interrogation and detention center.

23.     Prisoners incarcerated at Guantánamo are entitled to test the legality of their detention in the
        federal courts. *Rasul v. Bush*, 542 U.S. __, 124 S.Ct. 2686, 2698 (June 28, 2004).

24.     In early 2002, the United States military had, on information and belief, purchased Petitioner
        Al Qadir abroad for a bounty and taken him to Guantánamo, where he has been held ever
        since, in the custody and control of Respondents.

**The Conditions of Detention at Guantanamo**

25.     Since gaining control of Petitioner Al Qadir, the United States military has held him virtually
        *incommunicado.*

26.     Upon information and belief, Petitioner Al Qadir has been or will be forced to provide
        involuntary statements to Respondents' agents at Guantánamo and has been or will be
        interrogated repeatedly by agents of the United States Departments of Defense and Justice,
        and the Central Intelligence Agency, though he has not been charged with an offense and has
        not been notified of any pending or contemplated charges. He has not appeared before a
        lawful military or civilian tribunal, and has not been provided access to counsel or the means
        to contact and secure counsel. He has not been adequately informed of his rights under the
        United States Constitution, the regulations of the United States Military, the Geneva
        Convention, the International Covenant on Civil and Political Rights, the American
        Declaration on the Rights and Duties of Man, the 1954 Convention Relating to the Status of
        Refugees or customary international law. Indeed, Respondents have taken the position that
        Petitioner Al Qadir should not be informed of these rights. As a result, Petitioner Al Qadir
        lacks any ability to protect or to vindicate his rights under domestic and international law.

27.     Upon information and belief, Petitioner Al Qadir has been forced to provide involuntary
        statements to Respondents' agents, employees, and/or contract employees at Guantanamo.

8

28.    Upon information and belief, Petitioner Al Qadir has been held under conditions that violate his

constitutional and international rights to dignity and freedom from torture and from cruel,

inhuman and degrading treatment or punishment. *See, e.g.,* United Nations Press Release,

"United Nations Human Rights Experts Express Continued Concern About Situation of

Guantánamo Bay Detainees," Feb. 4, 2005; International Committee of the Red Cross, Press

Release, "The ICRC's Work at Guantánamo Bay," Nov. 30, 2004; International Committee of

the Red Cross, Operational Update, "US Detention Related to the Events of September 11, 2001

and Its Aftermath - the Role of the ICRC," July 26, 2004; Amnesty International, *United States*

*of America: Human Dignity Denied: Torture and Accountability in the 'War on Terror'*, at 22

(Oct. 27, 2004) (available at http://web.amnesty.org/library/Index/ENGAMR

511452004); *see also* Barry C. Scheck, *Abuse of Detainees at Guantanamo Bay*, The Nat'l

Assoc. of Criminal Defense Lawyers Champion, Nov. 2004, at 4-5. Indeed, many of these

violations – including isolation for up to 30 days, 28-hour interrogations, extreme and prolonged

stress positions, sleep deprivation, sensory assaults, removal of clothing, hooding, and the use of

dogs to create anxiety and terror – were actually interrogation techniques approved for use at

Guantánamo by the most senior Department of Defense lawyer. *See* Action Memo from William

J. Haynes II, General Counsel, DOD, to Secretary of Defense (Nov. 27, 2002); *Pentagon*

*Working Group Report on Detainee Interrogations in the Global War on Terrorism: Assessment*

*of Legal, Historical, Policy and Operational Considerations*, at 62-65 (Apr. 4, 2003).[1]

29.    In a confidential report to the United States government, the ICRC charged the U.S. military

with intentional use during interrogations of psychological and physical coercion on

---

[1] Additional details of the cruel and degrading conditions suffered by detainees at Guantanamo are
set out at length in a statement by numerous released British detainees. *See* Shafiq Rasul, Asif Iqbal
& Rhuhel Ahmed, *Composite Statement: Detention in Afghanistan and Guantanamo Bay*, 300, *at*
http://www.ccr-ny.org/v2/reports/docs/Gitmo-compositestatementFINAL23    july04.pdf).    The
Department of Defense also informed the Associated Press that a number of interrogators at

prisoners at Guantánamo that is "tantamount to torture." *See* Neil A. Lewis, "Red Cross

Finds Detainee Abuse in Guantánamo," *New York Times*, Nov. 30, 2004, at A1. The report

includes claims that doctors and other medical workers at Guantánamo participated in

planning for interrogations. *Id.*; *see also* M. Gregg Bloche and Jonathan H. Marks, "When

Doctors Go to War," *New England Journal of Medicine*, Jan. 6, 2005, at 3-4. Since details

of the ICRC's report emerged, new revelations of abuse and torture at Guantánamo have

appeared, including FBI memos detailing torture and "highly aggressive interrogation

techniques" including 24-plus hour interrogations involving temperature extremes, dogs,

prolonged isolation, and loud music. *See Guantánamo: An Icon of Lawlessness,* Amnesty

International, Jan. 6, 2005, at 3-5; *see also* Neil A. Lewis, "Fresh Details Emerge on Harsh

Methods at Guantánamo," *New York Times*, Jan. 1, 2005, at A11; Carol D. Leonnig, "Further

Detainee Abuse Alleged; Guantánamo Prison Cited in FBI Memos," *Washington Post*, Dec.

26, 2004, at A1; Neil A. Lewis and David Johnston, "New F.B.I. Memos Describe Abuses of

Iraq Inmates," *New York Times*, Dec. 21, 2004, at A1; Dan Eggen and R. Jeffrey Smith, "FBI

Agents Allege Abuse of Detainees at Guantánamo Bay," *Washington Post*, Dec. 21, 2004, at

A1; Neil A. Lewis, "F.B.I. Memos Criticized Practices at Guantánamo," *New York Times*,

Dec. 7, 2004, at A19.

30.   The unlawful and unconstitutional interrogation techniques used by Respondents at

Guantánamo include not only physical and psychological abuse but also other impermissible

conduct contrary to due process requirements, including, upon information and belief, having

agents of the Government present themselves as lawyers for the detainees during meetings

with the detainees, for the purpose of extracting information from the detainees. *See* Sam

---

Guantanamo have been demoted or reprimanded after investigations into accusations of abuse at the
facility. *See Report Details Guantanamo Abuses*, Assoc. Press, Nov. 4, 2004.

Hannel, "Lawyers Describe Guantánamo Detainees," *Seattle Post-Intelligencer*, Jan. 19, 2005.

31.    Respondents and/or predecessors in office, acting individually or through their agents, have stated that whatever limitations apply on coercive interrogation techniques used by U.S. military officials under the auspices of the Department of Defense *do not apply* to interrogations conducted by agents of the CIA or other entities under President Bush. Eric Lichtblau, "Gonzales Says '02 Policy on Detainees Doesn't Bind CIA," *New York Times*, Jan. 19, 2005, at A17; Dan Eggen and Charles Babington, "Torture by U.S. Personnel Illegal, Gonzales Tells Senate," *Washington Post*, Jan. 18, 2005, at A4.

32.    In published statements, President Bush, and other government officials, have proclaimed that the United States may hold the detainees under their current conditions indefinitely. See, e.g., Roland Watson, *The Times* (London), Jan. 18, 2002 ("Donald Rumsfeld, the U.S. Defense Secretary, suggested last night that Al-Qaeda prisoners could be held indefinitely at the base. He said that the detention of some would be open-ended as the United States tried to build a case against them."); Lynne Sladky, Assoc. Press, Jan. 22, 2002 ("Marine Brig. Gen. Mike Lehnert, who is in charge of the detention mission, defended the temporary cells where detainees are being held . . . . 'We have to look at Camp X-ray as a work in progress . . .' Lehnert told CNN. Lehnert said plans are to build a more permanent prison 'exactly in accordance with federal prison standards . . . .'"); John Mintz, "Extended Detention in Cuba Mulled," *The Washington Post*, February 13, 2002. ("As the Bush Administration nears completion of new rules for conducting military trials of foreign detainees, U.S. officials say they envision the naval base at Guantanamo Bay, Cuba, as a site for the tribunals and as a terrorist penal colony for many years to come.".

33.    According to the Department of Defense, even detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantánamo

indefinitely. *See* Department of Defense Press Background Briefing of July 3, 2003, *at* http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last visited Feb. 14, 2005).

34.    Counsel for Respondents have also consistently maintained that the United States has reserved the right to hold the detained Petitioners under their current conditions indefinitely. *In re Guantánamo Detainee Cases*, Nos. 02-CV-0299 (CKK), *et al.*, (D.D.C.), Tr. of Dec. 1, 2004 Or. Argument on Mot. to Dismiss at 22-24, statements of Principle Deputy Associate Att'y Gen. Brian Boyle; *see also* Dana Priest, "Long-Term Plan Sought for Terror Suspects," *Wash. Post*, Jan. 2, 2005, at A1.

**Rendition and Transfer**

35.    Upon information and belief, the United States has secretly transferred detainees to countries that routinely practice torture without complying with the applicable legal requirements for extradition. This practice, known as "rendition" or "extraordinary rendition," is used to facilitate interrogation by subjecting detainees to torture. *See* Jane Mayer, "Outsourcing Torture: The Secret History of American's "Extraordinary Rendition" Program, *The New Yorker*, Feb. 14, 2005, at 106. Rendition may also be used to frustrate the jurisdiction of U.S. courts. The United States has also, upon information and belief, transferred, or made or is making preparations for transfer of detainees, against their will, to countries where they face serious risk of death, torture or other inhumane treatment.

36.    The U.S. government's practice of rendition has been well documented by various major American and international news organizations, including, *inter alia*, the *Washington Post*, *The Los Angeles Times*, and the British Broadcasting Corporation (the "BBC"). According to the account,

> "Since September 11, the U.S. government has secretly transported dozens of
> people suspected of links to terrorists to countries other than the United States
> bypassing extradition procedures and legal formalities, according to Western
> diplomats and intelligence source. The suspects have been taken to countries,
> . . . whose intelligence services have close ties to the CIA and where they can
> be subjected to interrogation tactics -- including torture and threats to families
> -- that are illegal in the United States, the sources said. In some cases, U.S.
> intelligence agents remain closely involved in the interrogations, the sources
> said."

Rajiv Chanrasekaran & Peter Finn, "U.S. Behind Secret Transfer of Terror Suspects," *Wash. Post*, Mar. 11, 2002, at A1; *see also* Dana Priest, "Long Term Plan Sought for Terror Suspects," *Wash. Post*, Jan. 2, 2005, at A1 ("The transfers, called 'renditions,' depend on arrangements between the United States and other countries, such as Egypt, that agree to have local security services hold certain suspects in their facilities for interrogation by CIA and foreign liaison officers.").

37.   Upon information and belief, Petitioner Al Qadir is at risk of being rendered, transferred or returned without lawful procedures to a country that engages in torture during interrogations and incarceration or otherwise presents an undue risk of death, torture or other inhumane treatment.. Rendition or transfer does not preempt this Court's jurisdiction of responsibilities. *County of Los Angeles v. Davies*, 440 U.S. 625, 631 (1979) (government's burden as to mootness); *Zalawadia v. Ashcroft*, 371 F. 3d 292, 297 (5th Cir. 2004) ("The Supreme Court has made it clear that the 'in custody' determination is made at the time the *habeas* petition is filed . . . . (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)); *Carafas v. LaVallee*, 391 U.S. 234, 238-39 (1968) (noting that 28 U.S.C. §2243 "contemplate[s] the possibility of relief

13

other than immediate release from physical custody" and holding that "once the federal

jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner

prior to completion of proceedings on such application"); *Zegarra-Gomez v. I.N.S.*, 314 F. 3d

1124, 1127 (9th Cir. 2003) (petitioner's deportation does not moot *habeas* claim where

petition was filed prior to release from custody); *Chong v. Dist. Dir., I.N.S.*, 264 F. 3d 378,

382-86 (3d Cir. 2001) (subsequent deportation did not defeat jurisdiction where petitioner

was in custody on the date her petition was filed); *Smith v. Ashcroft*, 295 F. 3d 425, 428 (4th

Cir. 2002) (petitioner need only have been in custody at time *habeas* petition filed to avoid

jurisdiction challenge); *Leitao v. Reno*, 311 F. 3d 453, 455-56 (1st Cir. 2002) (same). Thus,

even if jurisdiction in this case were predicated solely on the *habeas* statute (which it is not),

the transfer of Petitioner Al Qadir to another country does not eliminate habeas jurisdiction to

review the issues presented and to provide appropriate relief.

## IV.    CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### (COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL DEPRIVATION OF LIBERTY)

38.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

39.    By the actions described above, Respondents, acting under color of law, have violated and

continue to violate common law principles of due process as well the Due Process Clause of

the Fifth Amendment to the Constitution of the United States.  President Bush has ordered

the prolonged, indefinite, and arbitrary detention of individuals, without due process of law,

and the remaining Respondents have implemented those orders. Respondents' actions deny

Petitioner Al Qadir the process accorded to persons seized and detained by the United States

military in times of armed conflict as established by, *inter alia*, the Uniform Code of Military

Justice,  Army Regulation 190-8, Articles 3 and 5 of the Third and Fourth Geneva

14

Conventions, and customary international law as reflected, expressed, and defined in

multilateral treaties and other international instruments, international and domestic judicial

decisions, and other authorities.

40.    To the extent that Petitioner Al Qadir's detention purports to be authorized by the Executive

Order, that Order violates the Fifth Amendment on its face and as applied to Petitioner.

41.    Accordingly, Petitioner Al Qadiris entitled to habeas, declaratory, and injunctive relief, as

well as any other relief the court may deem appropriate.

SECOND CLAIM FOR RELIEF

(DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE
UNITED STATES - UNLAWFUL CONDITIONS OF CONFINEMENT)

42.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

43.    By the actions described above, Respondents, acting under color of law, have violated and

continue to violate the right of Petitioner Al Qadir to be free from unlawful conditions of

confinement, in violation of the Due Process Clause of the Fifth Amendment to the

Constitution of the United States.

44.    Accordingly, Petitioner Al Qadir is entitled to declaratory and injunctive relief as well as any

other relief the court may deem appropriate.

THIRD CLAIM FOR RELIEF

(GENEVA CONVENTIONS - ARBITRARY DENIAL OF DUE PROCESS)

45.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

46.    By the actions described above, Respondents, acting under color of law, have denied and

continue to deny Petitioner Al Qadir the process accorded to persons seized and detained by

the United States military in times of armed conflict as established by specific provisions of

the Third and Fourth Geneva Conventions.

15

47.    Violations of the Geneva Conventions are direct treaty violations, are violations of customary international law, and constitute an enforceable claim under 28 U.S.C. § 2241 (c)(3).

48.    Respondents are liable for this conduct described above, insofar as they set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

49.    Accordingly, Petitioner Al Qadir is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

FOURTH CLAIM FOR RELIEF

(INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW - ARBITRARY DENIAL OF DUE PROCESS)

50.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

51.    By the actions described above, Respondents have denied and continue to deny Petitioner Al Qadir the due process accorded to persons seized and detained by the United States military in times of armed conflict as establish by customary international humanitarian and human rights law as reflected, expressed, and defined in multilateral treaties and other international instruments and domestic judicial decisions, and other authorities.

52.    Accordingly, Petitioner Al Qadir is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

FIFTH CLAIM FOR RELIEF

(ALIEN TORT STATUTE - TORTURE)

53.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

54.    By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about acts that deliberately and intentionally inflicted severe physical and psychological abuse and agony upon Petitioner Al Qadir in order to obtain

coerced information or confessions from him, punish or intimidate Petitioner Al Qadir or for other purposes. Among other abuses, detainees – including Petitioner Al Qadir have been subjected to one or more acts of being held in conditions of isolation; placed in constant vulnerability to repeated interrogation and severe beatings; kept in cages with no privacy; shackled with heavy chains and irons; placed in solitary confinement for minor rule infractions for prolonged periods of time; interrogated while shackled and chained in painful positions; exposed to extremes of temperature; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture; sexually humiliated; denied access to counsel and family; deprived of adequate medical care; and subjected to repeated psychological abuse.

55.     The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

56.     Respondents are liable for said conduct because they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit the acts of torture against Petitioner Al Qadir.

57.     Petitioner Al Qadir was forced to suffer severe physical and psychological abuse and agony and is entitled to habeas, declaratory, and injunctive relief, and other relief to be determined at trial.

SIXTH CLAIM FOR RELIEF

(ALIEN TORT STATUTE - WAR CRIMES )

60.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

61.     By the actions described above, Respondents' acts directing, ordering, confirming, ratifying, and/or conspiring to bring about the torture and other inhumane treatment of Petitioner Al Qadir constitute war crimes and/or crimes against humanity in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated, among others, the Fourth Geneva Convention, Common Article III of the Geneva Conventions and Additional Protocols I and II of the Geneva Conventions as well as customary international law prohibiting war crimes as reflected, expressed, and defined in other multilateral treaties and international instruments, international and domestic judicial decision, and other authorities.

62.     As a result of Respondents' unlawful conduct, Petitioner Al Qadir has been and is forced to suffer severe physical and psychological abuse and agony, and is therefore entitled to habeas, declaratory, and injunctive relief, and such other relief as the court may deem appropriate.

## SEVENTH CLAIM FOR RELIEF

## (ALIEN TORT STATUTE – CRUEL, INHUMANE OR DEGRADING TREATMENT)

65.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

66.     The acts described herein had the intent and the effect of grossly humiliating and debasing Petitioner bin Mohammed, forcing him to act against his will and conscience, inciting fear and anguish, and breaking his physical or moral resistance.

67.     The acts described herein constitute cruel, inhuman or degrading treatment in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting cruel, inhuman or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

18

68.     Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to cause the cruel, inhuman or degrading treatment of Petitioner bin Mohammed.

69.     Petitioner Al Qadir was forced to suffer severe physical and psychological abuse and agony and is entitled to declaratory and injunctive relief, as well as other relief to be determined at trial.

## EIGHTH CLAIM FOR RELIEF

### (ALIEN TORT STATUTE -
### ARBITRARY ARREST AND PROLONGED ARBITRARY DETENTION)

70.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

71.     The acts described herein constitute arbitrary arrest and detention of Petitioner Al Qadir in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

72.     Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about the arbitrary arrest and prolonged arbitrary detention of Petitioner Al Qadir in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

73.     As a result of Respondents' unlawful conduct, Petitioner Al Qadir has been and is deprived of his freedom, separated from his family, and forced to suffer severe physical and mental

abuse, and is therefore entitled to habeas, declaratory, and injunctive relief, and such other

relief as the court may deem appropriate.

## NINTH CLAIM FOR RELIEF

## (ALIEN TORT STATUTE- ENFORCED DISAPPEARANCE)

74.   Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

75.   By the actions described above, the Respondents directed, ordered, confirmed, ratified,

and/or conspired to bring about the enforced disappearance of Petitioner Al Qadir in violation

of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated

customary international law prohibiting enforced disappearances as reflected, expressed, and

defined in multilateral treaties and other international instruments, international and domestic

judicial decisions, and other authorities.

76.   As a result of Respondents' unlawful conduct, Petitioner Al Qadir has been and is deprived

of his freedom, separated from his family, and forced to suffer severe physical and mental

abuse, and is therefore entitled to declaratory and injunctive relief and such other relief as the

court may deem appropriate.

## TENTH CLAIM FOR RELIEF

## (ARTICLE II OF THE UNITED STATES CONSTITUTION-
UNLAWFUL DETENTION)

77.   Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

78.   Petitioner Al Qadir is not, nor has he ever been, an enemy alien, lawful or unlawful

belligerent, or combatant of any kind.  The Executive lacks the authority to order or direct

military officials to detain civilians who are seized far from the theater of war or occupied

territory or who were not "carrying a weapon against American troops on a foreign

battlefield." *Hamdi v. Rumsfeld,* 124 S.Ct. 2633, 2642 n.1 (2004).

79.  By the actions described above, President Bush has exceeded and continues to exceed the Executive's authority under Article II of the United States Constitution by authorizing, ordering and directing that military officials seize Petitioner Al Qadir and transfer him to military detention, and by authorizing and ordering their continued military detention at Guantánamo. All of the Respondents acted and continue to act without lawful authority by directing, ordering, and/or supervising the seizure and military detention of Petitioner Al Qadir.

80.  The military seizure and detention of Petitioner Al Qadir by the Respondents is *ultra vires* and illegal because it violates Article II of the United States Constitution. To the extent that the Executive asserts that Petitioner's detention is authorized by the Executive Order, that Order exceeds the Executive's authority under Article II and is *ultra vires* and void on its face and as applied to Petitioner.

81.  To the extent that Respondents assert that their authority to detain Petitioner Al Qadir derives from a source other than the Executive Order, including without limitation the Executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the U.S. Armed Forces, whether from Article II of the Constitution or otherwise, Respondents lack that authority as a matter of fact and law.

82.  Accordingly, Petitioner Al Qadir is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

ELEVENTH CLAIM FOR RELIEF

(VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS UNLAWFUL DETENTION)

83.  Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

84.  Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat against the United States. *See, e.g.*, Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by

21

a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

85.    By arbitrarily and capriciously detaining Petitioner Al Qadir in military custody for over three years in the manner described above, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

86.    Accordingly, Petitioner Al Qadir is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

TWELFTH CLAIM FOR RELIEF

(VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS DENIAL OF DUE PROCESS )

87.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

88.    By the actions described above, Respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny Petitioner Al Qadir the process accorded to persons seized and detained by the United States military in times of armed conflict as established by Army Regulation 190-8 in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

89.    Accordingly, Petitioner Al Qadir is entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

THIRTEENTH CLAIM FOR RELIEF

(VIOLATION OF THE APA – TORTURE AND CRUEL, INHUMAN OR DEGRADING TREATMENT)

90.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

91.    By the actions described above, the Respondents have acted and continue to act arbitrarily and capriciously by directing, ordering, confirming, ratifying, and/or conspiring to unlawfully subject Petitioner Al Qadir to torture and/or cruel, inhuman or degrading treatment in

22

violation of Army Regulation 190-8 and the Administrative Procedures Act, 5 U.S.C. § 706(2).

92.    Accordingly, Petitioner Al Qadir is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

FOURTEENTH CLAIM FOR RELIEF

(VIOLATION OF THE RIGHT TO COUNSEL AND TO ACCESS TO THE COURTS)

93.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

94.    Respondents, purportedly acting from a concern for national security, consistently have contrived to intrude upon Petitioner Al Qadir's right to consult with counsel by conditioning counsel's access to Petitioner on unreasonable terms, including classification/declassification procedures, all in violation of Petitioner Al Qadir's attorney-client privilege, his work product privilege, and the Fifth and Sixth Amendments to the U.S. Constitution.

95.    Accordingly, Petitioner Al Qadir is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

FIFTEENTH CLAIM FOR RELIEF

(DUE PROCESS CLAUSE - RENDITION)

96.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

97.    Upon information and belief, Petitioner Al Qadir is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner's rights under the Due Process Clause of the Fifth Amendment to the United States Constitution.

98.    Accordingly, Petitioner Al Qadir is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

SIXTEENTH CLAIM FOR RELIEF

(CONVENTION AGAINST TORTURE AND
CONVENTION RELATING TO THE STATUS OF REFUGEES - RENDITION)

99. Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

100. Upon information and belief, Petitioner Al Qadir is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a direct violation of Petitioner's rights under the Covenant Against Torture and the 1954 Convention Relating to the Status of Refugees, 19 U.S.T. 6259, 189 U.N.T.S. 150 *entered into force* Apr. 22, 1954.

101. Accordingly, Petitioner Al Qadir is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

SEVENTEENTH CLAIM FOR RELIEF

(ALIEN TORT STATUTE- RENDITION)

102. Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

103. Upon information and belief, Petitioner Al Qadir is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner's rights under customary international law, which may be vindicated under the Alien Tort Statute.

104. Accordingly, Petitioner Al Qadir is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

1. PRAYER FOR RELIEF

WHEREFORE, Petitioner prays for relief as follows:

1. Grant the Writ of Habeas Corpus and order Respondents to release Petitioner Al Qadir from his current unlawful detention;

2.      Order that Petitioner Al Qadir be brought before the Court or before a Magistrate Judge
        assigned by the Court to conduct proceedings under the supervision of the Court to vindicate
        his rights;

3.      Order that Petitioner Al Qadir cannot be transferred to any other country without the specific
        written agreement of Petitioner and Petitioner's counsel while this action is pending;

4.      Order that Petitioner Al Qadir cannot be delivered, returned, or rendered to a country where
        there is a foreseeable and imminent risk that Petition will be subject to torture;

5.      Order Respondents to allow counsel to meet and confer with Petitioner Al Qadir, in private
        and unmonitored attorney-client conversations;

6.      Order Respondents to cease all interrogations of Petitioner Al Qadir, direct or indirect, while
        this litigation is pending;

7.      Order Respondents to cease all acts of torture and cruel, inhuman and degrading treatment of
        Petitioner Al Qadir;

8.      Order and declare the Executive Order of November 13, 2001 is *ultra vires* and unlawful in
        violation of Article II of the United States Constitution, the Fifth Amendment to the U.S.
        Constitution, the Uniform Code of Military Justice, the Administrative Procedures Act, 5
        U.S.C. § 702, the treaties of the United States and customary international law;

9.      Order and declare that the prolonged, indefinite, and restrictive detention of Petitioner Al
        Qadir without due process is arbitrary and unlawful and a deprivation of liberty without due
        process in violation of common law principles of due process, the Due Process Clause of the
        Fifth Amendment to the United States Constitution, the regulations of the United States
        military, the treaties of the United States, and customary international humanitarian law; and

10.    Grant such other relief as the Court may deem necessary and appropriate to

protect Petitioner's rights under the common law, the United States Constitution, federal

statutory law, and international law.

Respectfully submitted,

Counsel for Petitioners

Jerry Cohen
Burns & Levinson LLP
125 Summer Street
Boston, MA 02110
Tel: (617) 345-3000

OF COUNSEL:
Zachary Katznelson
Cal. Bar. No. 209489
Legal Director
Reprieve                                  Stewart Eisenberg
PO Box 52742                              WEINBERG & GARBER, PC
London EC4P 4WS                          71 King Street
United Kingdom                           Northampton, MA 01060
Tel: 011-44(0) 207-353-4640
Fax: 011-44(0) 207-353                   Tel: (413) 582-6886
Zachary@Reprieve.org.uk                  Fax: (413) 582-6881
                                         buz.e@verizon.net

## CERTIFICATE OF SERVICE AND CERTIFICATE OF DISCUSSION PER LOCAL RULE 7 (LCvR7)

I hereby certify that the foregoing Petition for Writ of Habeas Corpus  has been served by Express
Mail upon:

Terry Henry, Esq.
U.S. Department of Justice
20 Mass. Avenue, NW Room 7226
Washington, DC 20529-0001
Attorney for Respondent

and further certify per Local Rule 7 (LCoR7) that counsel for Petitioner tried several times to contact
Respondents' counsel to discuss the Petition and the accompanying motions, without response from
Respondents' Counsel.

Jerry Cohen

Dated: June 26, 2008

Boston, Massachusetts

**CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION**

Pursuant to Local Rule 83.2(g), I certify that I, Jerry Cohen (D.C. Bar No. 87759 Massachusetts Bar No. 116413, Rhode Island Bar No.I 6341, together with co-counsel, Stewart Eisenberg (member, Massachusetts Bar No. 52180) and of Counsel, Zachary Katznelson (California, Bar No. 209849) all serve as counsel for Petitione, Mohammed Abd Al Al Qadir, without compensation.

June 25, 2008

Respectfully submitted,

Counsel for Petitioners

Jerry Cohen
Burns & Levinson LLP
125 Summer Street
Boston, MA 02110
Tel: (617) 345-3000

Stewart Eisenberg
WEINBERG & GARBER, PC
71 King Street
Northampton, MA 01060

Tel: (413) 582-6886
Fax: (413) 582-6881
buz.e@verizon.net

OF COUNSEL:
Zachary Katznelson
Cal. Bar. No. 209489
Legal Director
Reprieve
PO Box 52742
London EC4P 4WS
United Kingdom
Tel: 011-44(0) 207-353-4640
Fax: 011-44(0) 207-353
Zachary@Reprieve.org.uk

J:\Docs\31549\00001\01256107.DOC

G
08-1185
HHK

**CIVIL COVER SHEET**

JS-44
(Rev.I/05 DC)

## I (a) PLAINTIFFS

Mohammed Abd Al Al Qadir

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 99999
**(EXCEPT IN U.S. PLAINTIFF CASES)**

Pro Se (PR)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

## DEFENDANTS

George W. Bush, et al.,

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT...

ATT...

Case: 1:08-cv-01185
Assigned To : Kennedy, Henry H.
Assign. Date : 7/10/2008
Description: Habeas Corpus

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☒ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties
in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX.
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

| ☐ A. *Antitrust* | ☐ B. *Personal Injury/ Malpractice* | ☐ C. *Administrative Agency Review* | ☐ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br><br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

## ☐ E. *General Civil (Other)* OR ☐ F. *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Immigration**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus- Alien Detainee
☐ 465 Other Immigration Actions

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant

☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.

☐ 460 Deportation
☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not Administrative Agency Review or Privacy Act)

O

| ☒ G. *Habeas Corpus/ 2255* | ☐ H. *Employment Discrimination* | ☐ I. *FOIA/PRIVACY ACT* | ☐ J. *Student Loan* |
|---|---|---|---|
| ☒ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ K. *Labor/ERISA (non-employment)* | ☐ L. *Other Civil Rights (non-employment)* | ☐ M. *Contract* | ☐ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ Multi district Litigation  ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 USC 2241

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23   DEMAND $ 0   Check YES only if demanded in complaint  JURY DEMAND: ☐ YES  ☒ NO

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  ☐ YES  ☒ NO   If yes, please complete related case form.

DATE 7/10/08   SIGNATURE OF ATTORNEY OF RECORD  NCD

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

I:\forms\js-44.wpd